```
                                                          USDC-SDNY
                                                          DOCUMENT
                                                          ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                              DOC#:
SOUTHERN DISTRICT OF NEW YORK                             DATE FILED: 11/17/2020
```

IDEAVILLAGE PRODUCTS CORP.

                            Plaintiffs,

              v.

OHMYGOD 1, *et al.*,

                            Defendants.

No. 18-CV-9999 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

      Plaintiff Ideavillage Products Corp. brought this action against Defendants, 124 individuals and entities based in China, for selling counterfeit versions of its hair-removal products on the online marketplace Wish.com, in infringement of its trademarks and copyrights. Seventy-one (71) of those defendants[1] have not appeared in this action, and Plaintiff moves for a default judgment against them (collectively, the "Defaulting Defendants"). Plaintiff's motion is granted as to all Defaulting Defendants, except for slde, superboxi, Terry is World and YouMengGo.

## BACKGROUND

**I.    Procedural History**

      Plaintiff initiated this action on October 30, 2018, alleging infringement of federal trademark and copyright laws, and related state and common law claims. Dkt. 8. Plaintiff moved

---

[1] The "Defaulting Defendants" comprise: otp, OUT, Outdoor Leisure Sports Shop, pasttan, PCOCO, per, pinlilili, Qingsha's Store, qiuqiudexiaowu, ruanmedexiaodian, RuiTong Market, SanMing XueYuan 002, SF TIMES, shenzhen oneshow technolohy Ltd.com, shenzhenshizhuorihangkejiyouxiangongsi, SHHBHBLC, shoplng, SinceThen, skad, slde, Snowbird, songfengxiaodian, spo, StarmerxShop, SUPER CAT, Super Deal Trade, superboxi, syso, Tangtangniu, Terry is World, The life store, TONGTONGTOP, toolou, tSmart , VILTECK, wangjinhua200810, wangshiwenwen, wangwanghongling, wangzhihui001, wanyuanyuan, was, Weijinyi, weizhongzhan, welfarenow, Wen bin shop, Wendy001, Whuyanqi, wislnr, wlo, wsy270799166@163.com, xiaoanhong, xiaofudianpu, xiaokuyox, xiaoxiaochongwustore, xiaoxiaozou, xiaoyingaiqiu, Xie Kaikui shop, xiejjy, xiufeidexindianbu, xuewei, ylanya, YouMengGo, Yue Meng Store, Yuhui store, Yunchan00, yy123456, zhangfengstore, zhengfacai, zhoucheng157, zhouxiaoran and zp123456.

*ex parte* for a temporary restraining order, an order restraining Defendants' assets and merchant storefronts, an order to show cause why a preliminary injunction should not issue, and authorization to effect alternative means of service. *See* Dkt. 14-18. On October 31, 2018, the Court entered a temporary restraining order ("TRO")—which, *inter alia*, enjoined Defendants from further marketing the counterfeit products and restrained the financial institutions associated with Wish.com from providing services to Defendants—scheduled a show cause hearing for November 20, 2018, and authorized Plaintiff to effect service through a secure website and via email, using addresses identified by Wish.com's parent company. Dkt. 22. On November 7, 2018, Plaintiff served the Summons, Complaint, and TRO on all of the Defaulting Defendants. Dkt. 19. Defendants did not appear at the November 20, 2018 hearing. The Court entered a preliminary injunction against all Defendants, extending the terms of the TRO through the pendency of this action. Dkt. 24. On November 21, 2018, Plaintiff served the preliminary injunction order on all of the Defaulting Defendants. Dkt. 30.

On May 5, 2020, pursuant to Plaintiff's request, the Clerk of the Court entered a Certificate of Default against Defaulting Defendants. Dkt. 68. Plaintiffs filed the instant motion two days later. Dkt. 70 ("Pl. Mot."). On May 8, 2020, in light of the COVID-19 pandemic, the Court issued an order indicating that it would resolve the default judgment motion without a hearing. Dkt. 75. Plaintiff served a copy of the May 8, 2020 Order on every Defaulting Defendant, except Defendants slde, superboxi, Terry is World and YouMengGo.[2] Dkt. 76. The Defaulting Defendants have not responded to Plaintiffs' motion or otherwise appeared in this action.[3]

---

[2] Plaintiff does not explain why these four defendants were not served.
[3] Plaintiff has voluntary dismissed the claims against each of the remaining 53 defendants.

II.     Facts[4]

Plaintiff Ideavillage Products Corp. is a New Jersey corporation that sells and promotes consumer products through "national direct response television advertising." Compl. ¶¶ 4, 6. As relevant here, Plaintiff markets and sells a line of personal hair-removal tools under its Touch brand, for which it has obtained federal trademark registrations and common law trademark rights, as well as registered and unregistered copyrights. *Id*. ¶¶ 8-14. Plaintiff alleges that the Touch Products "have achieved great success since their initial introduction," *id*. ¶ 9, and that "the Touch marks, Touch Works and Touch products have become prominently placed in the minds of the public," *id*. ¶ 21. Defendants are individual merchants located in China who operate on an online marketplace platform called Wish.com ("Wish"), which allows manufacturers and other third parties to advertise and sell retail products to consumers worldwide, including in New York. *Id*. ¶¶ 5, 23, 27-28.

Concerned about the potential sale of counterfeit Touch products on Wish, Plaintiff hired New Alchemy Limited ("NAL") to investigate infringement of its intellectual property. *See id.* ¶¶ 29-30. NAL informed Plaintiff that Defendants are—without authorization or consent—manufacturing, marketing, promoting, and selling products that are "confusingly or substantially similar" to those in the Touch brand. *Id*. ¶¶ 31-32. The products sold by Defendants "are nearly indistinguishable from Plaintiff's Touch Products, only with minor variations that no ordinary consumer would recognize." *Id*. ¶ 33. Appended to the Complaint are numerous examples of counterfeit Touch products that are available to be sold and shipped to consumers in New York, attributable to each Defendant. *See* Compl. Ex. C.

---

[4] The following facts are drawn from the Complaint. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

## DISCUSSION

### I. Liability

"[T]he court may . . . enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). "[A] default is an admission of all well-pleaded allegations against the defaulting party." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

Plaintiff seeks a default judgment with respect to each of its eight causes of action: under the Lanham Act, Federal Copyright law, New York's General Business Law, and New York common law. Accepting the allegations in the Complaint as true, the Court concludes that Plaintiff has established liability on all eight causes of action.

The allegations in the Complaint establish liability under the Lanham Act as Defendants "use[d] in commerce [a] reproduction . . . or colorable imitation of a register mark" and "counterfeit[ed] . . . a registered mark . . . in connection with the sale . . . of goods or services" "without the consent of the registrant," in a manner that was likely to cause consumer confusion. 15 U.S.C. § 1114(1)(a)-(b); *see Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006). Plaintiff is the exclusive owner of the Touch trademarks and copyrights at issue in this litigation. Compl. ¶¶ 46, 57, 78. The Complaint thus establishes liability under federal copyright law as well. *See* 17 U.S.C. § 501(b).

For similar reasons, the Complaint establishes liability under New York statutory and common law. New York courts apply the General Business law broadly. *See Karlin v. IVF Am., Inc.,* 93 N.Y.2d 282, 290–91, 712 N.E.2d 662, 690 N.Y.S.2d 495 (1999). Defendants' sale of counterfeit products undoubtedly qualifies as "[d]eceptive acts or practices" and "[f]alse

advertising" in the conduct of business in New York State. *See* N.Y. Gen. Bus. Law §§ 349, 350. To prevail on a claim for unfair competition under New York common law, "a plaintiff must couple its evidence supporting liability under the Lanham Act with additional evidence demonstrating the defendant's bad faith." *Omicron Capital, LLC. v. Omicron Capital, LLC.*, 433 F. Supp. 2d 382, 395 (S.D.N.Y. 2006) (internal quotation marks omitted). The allegations that Defendants had actual notice of Plaintiff's exclusive rights to the Touch brand, *see* Compl. ¶ 59, and acted with the intent to cause confusion and damage Plaintiff's business, *see* Compl. ¶ 99, are sufficient to plead bad faith. Likewise, the Complaint makes clear that Defendants were unjustly enriched at Plaintiff's expense. *See Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2d Cir. 2001).

In sum, the Complaint alleges that Defendants profited from a willful infringement of Plaintiff's intellectual property. On a motion for default judgment, those allegations suffice to establish the liability of Defaulting Defendants under each cause of action. However, because Plaintiff has not affirmed that defendants slde, superboxi, Terry is World and YouMengGo were served with the Court's May 8, 2020 order, the Court declines to enter default against them at this juncture.

## II.   Damages

Pursuant to the Lanham Act, Plaintiff seeks from each Defaulting Defendant an award of statutory damages in the amount of fifty thousand dollars. Although a "'party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (*quoting Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty*

Corp., 973 F.2d 155, 158 (2d Cir. 1992)). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). A court is required to "ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

The Lanham Act permits a plaintiff to elect to recover, instead of actual damages and profits, an award of statutory damages in the amount of: "(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c). Accordingly, courts have wide discretion in determining the amount of statutory damages. *See, e.g.*, *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986) (discussing statutory damages in the context of Federal Copyright law).

To determine the appropriate amount of a statutory-damages award, courts typically consider the following factors: (1) the expenses saved and the profits reaped by defendant; (2) the revenues lost by plaintiff; (3) the value of the copyright or mark; (4) the scale of defendant's infringement; (5) whether defendant's conduct was innocent or willful; (6) whether defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant and others. *Id.; see also Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 425 (S.D.N.Y. 2018) (applying the *Fitzgerald* factors to a default judgment under the Lanham Act).

Plaintiff's request of $50,000 is consistent both with the range authorized by the Lanham Act, and with awards granted by Judges in this District. *See*, *e.g.*, *id*. ("An award of $50,000 per defendant is appropriate and just, given that each defendant sold at least one infringing product"); *Allstar Mktg. Grp., LLC v. 123 Beads Store*, No. 19-CV-3184 (AJN), 2020 WL 5836423, at *6 (S.D.N.Y. Sept. 30, 2020) (awarding $50,000 per defaulting defendant in statutory damages); *Ideavillage Prod. Corp. v. Bling Boutique Store*, No. 16-CV-9039 (KMW), 2018 WL 3559085, at *6 (S.D.N.Y. July 24, 2018) (same). With regard to the first two *Fitzgerald* factors, there is no evidence as to unjust profits or lost revenues. "Courts, however, have supported an inference of a broad scope of operations in cases dealing specifically with websites that ship and sell to a wide geographic range." *Spin Master Ltd.*, 325 F. Supp. 3d at 426. The remaining factors weigh in favor of a relatively high statutory damages award. The Complaint alleges that the Touch trademark is valuable by virtue of its wide recognition, and that Defendants' willfully profited off of that recognition. Lastly, Defendants' failure to appear in this action prevents the Court from quantifying the value of the infringing material.

The Court thus concludes that an award of $50,000 per defendant is appropriate in this case. Plaintiff is also entitled to post-judgment interest on that award, to be determined according to the statutory formula. *See* 28 U.S.C. § 1961 (providing that interest shall be measured "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding[] the date of the judgment," "computed daily to the date of payment" and "compounded annually").

**III.   Injunctive Relief**

Plaintiff requests that this Court permanently enjoin the Defaulting Defendants from infringement of the Touch marks, from concealing any data or records relating to the sale of Touch

products, and from forming new entities or user accounts to circumvent this judgment. *See* Dkt. 73. The proposed order would make permanent the preliminary injunction that is currently in place. The Lanham Acts expressly vests the Court with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right" of a trademark holder. 15 U.S.C. § 1116(a). It is well-established that a court may grant a permanent injunction as part of a default judgment. *See Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015) (collecting cases). Whether to issue a permanent injunction in such a case depends on (1) the likelihood that plaintiff will suffer irreparable harm if an injunction is not granted; (2) whether remedies at law such as monetary damages are inadequate to compensate plaintiff for that harm; (3) the balance of hardships; and (4) whether the public interest would not be disserved by a permanent injunction. *See Salinger v. Colting*, 607 F.3d 68, 77–78 (2d Cir. 2010).

All of the above factors weigh in favor of granting the proposed injunction. As established above, Plaintiff has alleged that the Defaulting Defendants have willfully infringed its intellectual property at considerable injury to Plaintiff. Defendants' conduct, including their failure to appear in this action, suggests that the counterfeiting will continue absent intervention from the Court and that monetary damages alone will not suffice as a remedy. A permanent injunction would also promote the public interest in freedom from deception in the marketing of consumer goods. *See, e.g., 3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 198 (S.D.N.Y. 2020). Accordingly, the Court will enter the permanent injunction.

**IV.    Asset Restraint**

Pursuant to Plaintiff's request, the asset restraint imposed in the TRO shall remain in place post-judgment. Without such a restraint, Defendants would have fourteen days during which they

could hide their assets.  *See Spin Master Ltd.*, 325 F. Supp. 3d at 427;  Fed. R. Civ. P. 62(a) ("[N]o execution may issue on a judgment, nor may proceedings be taken to enforce it, until 14 days have passed after its entry.").  To aid in the enforcement of the judgment, the restraint shall continue until Plaintiff can enforce the judgment entered by the Court.  For the same reasons, the Court authorizes the transfer of Defaulting Defendants' frozen assets in satisfaction of the judgment.  *See Spin Master Ltd. v. 13385184960@163.com*, No. 18 CIV. 10524 (LGS), 2020 WL 2614766, at *5 (S.D.N.Y. May 22, 2020) ("Courts in this district routinely order transfers of infringing defendant[s'] frozen assets . . . relying on the authority to issue injunctive relief under Rule 64 of the Federal Rule of Civil Procedure, § 1116(a) of the Lanham Act, and this Court's inherent equitable power…").

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for default judgment is granted, as to each Defaulting Defendant except slde, superboxi, Terry is World, and YouMengGo, who have not yet been served with the Court's most recent order.  No later than December 1, 2020, Plaintiffs shall advise the Court whether it seeks to further litigate the claims against those four defendants.  The Clerk of Court is respectfully directed to terminate item 70 on the docket.

SO ORDERED.

Dated:   November 17, 2020
         New York, New York

Ronnie Abrams
United States District Judge